Court. My name is Andy Wiener. I represent the United States in this matter. This case concerns a harmless breach of a closing agreement between the Internal Revenue Service and the Oakland Raiders, a partnership in which the taxpayers were partners. How do we know it's harmless? On this record, how do we know it's harmless? Well, Your Honor, there's no question that the liability that was ultimately assessed was correct. There's also — Well, they dispute that now. Well, respectfully, Your Honor, I don't think so. I think that they said that they might have, but I believe, as we showed in our reply brief, that, well, first of all, for many years they did not dispute this. And then when they — when we filed our opening brief and they said, well, we might have if we had known that harmlessness was going to be an issue, we pointed out that, in fact, it was their burden to contest the amount of the — Well, that's a little bit different than contest it. I mean, they said we would have done it, and you say they didn't, and it's uncontested. Yeah. It may have been waived. It may not have pursued it. But why do we know it's harmless? Well, again, Your Honor, I don't think that there's any dispute as to the amount that was assessed and collected. Second of all — Well, how do we know — I haven't said anything specifically, but let me ask you this. Is it the government's position that that sort of provision in a settlement agreement is essentially unenforceable? Because you breached it. You now concede the breach, though you fought that below. And you're saying there's nothing that can be done about that. They can go to claims court, which I'm not sure whether there's even a procedure that would allow them in this context. So is it unenforceable? Is that just illusory covenant? No, Your Honor. That's not our position. Our position is that what we did was we gave them a — we made them a promise that we would provide them proposed computational adjustments ahead of the assessment period. But what the provision did not do, it did not provide them any special rights with respect to the government's ability to make assessments. Now, let's assume — Judge Acuta is asking a different question. Okay. Let's assume that you were within your rights to make the assessments, but you plainly breached the contract. The contract said you wouldn't make the assessments until you gave them sufficient time to check the computations. Didn't give them sufficient time to do that. What's the remedy for that breach of contract, or is the government just free not to follow its contracts? No, Your Honor. First of all, let it be plain that we do not contest that there's a term, that the term was enforceable, and that we breached it. Okay. So what's the remedy? There's no way to remedy. The remedy is damages as it is in any contract claim. All right. Go ahead. Go ahead. No, no. So what you said in your brief was, well, if they can come up with some damages, they can go to claims court. That doesn't seem like a very effective remedy that they would have. I don't even know if procedurally they'd be able to do that. But you're saying within the contract, there's no remedy. There's nothing they can do. Well — It has no effect, essentially. It's just an unenforceable covenant. Again, it is not our position that we entered into a term that was totally unenforceable. Here it was harmless. But in another case — Well, but you're saying it's harmless because they've done nothing with respect to it. And perhaps that's waiver. But let's — let me give you a hypothetical. Let's assume that they think these assessments are wrong. They would have done different computations and come up with a different number. And let's move backwards in time to the time you make this assessment. They made bad computations. The IRS made bad computations. The Davises want to contest them. What do they do? Do they file a refund? Do they file a refund suit? They file a claim for refund if they feel like, for example — They did so here, although making a different argument. Why shouldn't we let them go back and amend their complaint, if they wish to, and raise a claim that these were improperly computed? Well, Your Honor, again, it runs into the problem of variance. But they would have to go back and they would have to file administrative claims for refund that would assert that the liability was not properly — the liability was not properly computed. And would you assert that those were untimely? I would have to go back and look to what the limitations would be on that. It's nothing that they've asserted in this case. And so — But there's some force to their argument that you didn't raise harmlessness below in any meaningful way. I grant you it's maybe raised in passing, but it wasn't the central focus of your argument. And you led with the argument today, as you did with your brief, that this is harmless. Right. So their response is, hey, this is a new argument. We should have a chance to show the prejudice or, in fact, it was harmful. What's wrong with that? Well, again, Your Honor, first of all, I think that, as you suggested, we did raise it below. And so, I mean, it certainly wasn't — You have to look pretty hard at one sentence in passing that's not labeled. I mean, that's — But I think the important part is that we also said in the same section of our brief that what the breach of paragraph Q provided was not to invalidate the assessment. And I'm saying — I'm saying let's assume for purposes of discussion that we agree with you on that. Okay. I'm still trying to figure out how — why it is that they're left without any remedy at all for your breach of the contract. And I'm not sure I can say it's harmless because this record doesn't tell me it's harmless. It may well be. I want to ask them whether they've got a claim that the computations were made incorrectly. And if they don't, then I guess it is harmless. But let's assume that they do want to contest the computations. How do they — how would they do that? You say through a refund suit, right? Yeah, absolutely. They have a — And they filed a — they filed a refund suit. I'm sorry. For other things. Raising other issues. But raising the same transaction, Rule 15a would seem to cover this. It's simply a matter — you know, it's a — why wouldn't we then say, look, if you want to go back and file an amended complaint and complain about the computations, have at it. What's wrong with that result? Well, first of all, I think, again, the initial problem is that taxpayers not even on appeal have asked for that. And then second of all, I think they made a strategic decision by virtue of the fact that they were going to — they weren't going for a single, they were going for a home run. And so — Well, that's actually a touchdown. That may be true. But you were going for the home run, too, below. I mean, I'm looking through all of the arguments that the IRS made. And harmlessness was not one of them, except maybe in passing and talking about a potential remedy. You made a whole host of arguments. If Judge LaPorte had thought you were addressing harmlessness, she would have addressed it in her very lengthy opinion. So that wasn't really part of your defense, either. Both sides were litigating an entirely different case here. So how do you win when you say they didn't litigate a case that we're now raising for the first time on appeal? Well, again, I think that the magistrate approach below did recognize that there is no question as to the amount of the assessments, which is why she called it a windfall. But beyond that, I think that the important part here is that the contract — again, the IRS breached the term of the contract. The question is, what is the ramifications of that? And we clearly argued, and it was a — not in passing, that it was not a condition of making valid assessments that the IRS comply with this term. This term is a promise that the IRS made, and it did not comply with it. What the — what it did not afford taxpayers was any special rights with respect to the assessment procedures, or it did not relieve them of the necessity to challenge an assessment that they disagreed with. Now, again, there's also no dispute, at least taxpayers did not contest, that taxpayers in this case had multiple avenues in which to challenge the amount of the assessment. They could have, A, just written a letter after the assessment and said, listen, you guys assessed an improper amount. We want you to abate. They never did that. No, but that wasn't what the contract or the agreement called for. I mean, the agreement set forth a procedure and didn't require them to do that. And if taxpayers want to go to, for instance, if they want to assert a breach of contract claim against the government for the, you know, the additional expense of them having to do that, then that's a breach of contract claim. That's a remedy. Or if, for instance, if — oh, I'm sorry. We're back in claims court. Can I sneak in just a question about the statute of limitations argument? So the government has a theory that the 6231B1C, which says that the partnership items of a partner becomes nonpartnership items when the IRS enters into a settlement agreement, that that only — that takes place not at the partnership level, but at the individual taxpayer or the individual partner level. And I didn't see anything in the statute that made that distinction. The government's relying on the Tenth Circuit case, MAFIA, and when I read MAFIA and checked their citations, their citations didn't support their holding either. So why is it not the case that at the time the tax court entered the decision documents, that that started the statute of limitations running? Your Honor, well, a couple of reasons. One is that I respectfully disagree. I think that in the language of the statute, it says that partnership items convert to nonpartnership items when the IRS enters into a settlement agreement with the partner. With respect to such items. But with the partner, it says. Yeah, with the partner. With the partner. But the partner did not enter — when I look at who the — who signed the settlement agreement, it wasn't the partner, was it? Correct, Your Honor. So, A, we don't have a settlement agreement. But the TMP entered — the tax management partner entered into the settlement agreement, and then under the tax rules, when the court enters that, then that's a — all of the partners are parties to the tax case, and then all of the parties are parties to that settlement agreement. So you're not arguing now that the settlement agreement is not binding on the — on the Davises, correct? No. We're arguing that. So they're all parties to that settlement agreement. I — I think I disagree, Your Honor, because what they are parties to. But they're not parties to it. They — they are parties to the partnership-level proceeding by which the — the parties entered into a stipulated decision that then binds them. But they did not — A, there's no question that they didn't enter into the settlement agreement. And there's also no question that it was not with them as individual partners. The whole point of the statutory scheme is to allow the IRS to settle with individual partners outside of the scope of the partnership level. I know that's what you're saying, but the statute doesn't. Only MAFIA says that. Well, I — The statute only refers to the settlement with the partner, which I assume that's what happened here, is that the settlement agreement is binding on each of the partners. Again, it is — it is — it is the — it is the stipulated decisions that make them binding, but they are not parties to any settlement agreement. And I think if you look — But they're not bound by the agreement? Of course they are. They're parties, but they're not bound. They are bound by the — They're parties to the tax case, and they're bound by the settlement that was entered into by the TNP, but that doesn't make them parties to the settlement agreement. Is that what you're saying? No, it does not make them parties to the settlement agreement. Okay. I understand your argument. And in addition to that, the whole — the whole point of the — to read the — the notion that what the statutory scheme allows for is for a stipulated decision that would bind all the partners — I mean, it ends the partnership level proceeding and that for that to start the statute of limitations running when there's another provision that specifically says the statute of limitations starts to run again when the decision becomes final. There's two different statutes of limitations. But do you have a regulation that spells that out, this view of how the statute should be interpreted? Is there a regulation? Well, again, I think that the statute is plain on its face because it requires a set — Is there a — there's no regulation? I am not aware of a regulation. The other side cites a litigation guidance from the IRS, which they say says that that issue is an open issue. Do you disagree with that? Completely disagree with that, Your Honor. The reason that they — the — the — first of all, the — it was improper to cite it as authority because those sorts of documents which are published not for purposes of precedential value. But in addition, it just merely — it merely directs the field office to make clear what the statute already provides for, which is that — But we wouldn't give Skidmore deference or any level of deference to that, is that — But the thing is that even if you did give Skidmore deference, it would support the government's view that just the — the directive instructs area counsel to make clear what the statute provides, which is that a stipulated decision does not start the running of a limitations period before that stipulated decision becomes final. Do you find it somewhat ironic that we began this some years ago with the IRS arguing that the Raiders entered into an illusory contract, and it appears to be settled with an illusory contract? I have not — I have not pondered the — the — the irony, but from — from your vantage point, I could definitely see that. However, I would say this, and then I will reserve the last 20 seconds for — for rebuttal, which is that the IRS breached Paragraph Q. There's no question. But the remedy for that is — and this — the Paragraph Q itself does not provide for — and the IRS never would have entered into this idea that it was providing these taxpayers special rights with respect to its authority to make assessments under the Internal Revenue Code. That is not in any way, shape, or form what the Coercion Agreement provides for. Thank you, counsel. We'll give you a couple minutes for rebuttal. Thank you. Good morning. May it please the Court, Stephen Mayer for Appelese. I want to start where Mr. Weiner left off with his observation that Paragraph Q, quote, gave the taxpayers no special rights. That, in our view, is plainly wrong, and in our view, Paragraph Q, for multiple reasons, is a condition precedent to the IRS's ability — Even if it is a condition precedent, they have the statute — What's your damage from their violation of the condition precedent? If it's a condition precedent, there doesn't need to be damage. Well, I — perhaps, but that's not the question I asked. Okay. The question that I've been dying to ask, and I'm going to ask it early on when you get up, is we're now, what, 13 years into this, 14 years into this? How long after the assessments were made? The assessments were made in 2007. Okay. So we're eight years after the assessments were made. Are they right or wrong? We think they're wrong, and we said so at the time. Well, no, you didn't. I've read your letters. Were they calculated incorrectly? Well, if you look, for example, at the September 4 assessments, they were issued at the same time as the computational adjustments, and the two didn't track. The computational — the assessments for 1990 and 1992 were based on the June computational adjustments that the IRS conceded were there. And I know they later adjusted the interest on — That's correct. They later adjusted the interest. But with respect to not — with respect to stuff that they haven't fixed, are they wrong? We don't know. Why can't you know? You're eight years later. Because — well, for the reason — Or you're going to get 90 days to check the computations. You've had eight years to check the computations. Are they right or are they wrong? We — all I can say, Your Honor, is we don't know, and may I explain that, please. On June 21, 2007, we sent a letter to the IRS. This was after we got the initial round of computational adjustments. And we said in that letter that we needed multiple documents to ascertain whether the computational adjustments were correct. And, indeed, the IRS conceded in the joint stipulation that they filed in the district court, which is on page 78 of the excerpt of record, that the information requested was, quote, necessary to review the computational adjustments, close quote. We never got that information, as Judge LaPorte found. So I know, Your Honor, it is expressing incredulity that we don't know whether they're correct, but that is, in fact, the case. Because we never — The damage you would have suffered, I mean, I don't — let me tell you, I find your condition precedent argument difficult. So just — I'm not asking you to waive it. But assuming that you're — assuming that you can't invalidate the assessments in toto, it seems to me it is fair to give you the opportunity that you were deprived of, which was to dispute them. And I'd like to — you know, I really want to know whether you intend to dispute them. We will, yes. But I do think there's a way to dispose of this case. There are two ways to dispose of it. Oh, there's many ways to dispose of it, but I'm just — I'm telling you I have difficulty with your condition precedent argument. I want to address that, Your Honor. But first, I want to say this. The district court found at pages 15 and at page 18 of the transcript, of the excerpt of record, rather, that paragraph Q was a condition precedent. Let me just read what Judge LaPorte said at page 15. Paragraph Q places a condition precedent on recording the assessment. Would breaching a condition precedent have any effect on the IRS's ability to make an assessment? I mean, so they breach a provision of the contract, but they don't have — they're not deprived of any statutory authority. They already have your client's money. So what's the remedy for a breach of a condition precedent that's any different from a breach of a covenant under contract law? Because we're just talking about a contract here. Because the definition of a condition precedent is that the breach excuses the other party's performance. But you didn't have — the other party didn't have anything to perform because the IRS already had their money. Well, we did have the obligation to pay the tax. Well, and you say that this discharged you from the obligation to pay any tax for those years? Could you have sought a refund of everything that the IRS had? Or did it just discharge you from your obligation to pay the additional assessments? To pay the additional assessments. And what do you cite for — other than general contract principles, can you cite any case that tells me that the IRS has waived its statutory authority to make assessments? Yes. Philadelphia is a — Reading is a perfect example of a case where — That was a statutory — I mean, that was based on a statutory preclusion of assessments under certain circumstances. But there's no underlying statute here that was reinforced by the contract, right? That's correct. But the issue in that case was whether there was a valid waiver of the statutory notice provision. And the dissent held in that case that the language of the waiver was not a condition precedent and — because all it said was that the taxpayer would waive the statutory right to notice when the IRS made a schedule of overpayments. And the Court said that under the — that language, the dissent rather said or argued that under that language, the IRS could assess first and then issue the schedule of overpayment later. And the Court said — Was the IRS precluded from making an assessment unless there was a waiver by your client? I mean, it didn't seem to me that it was on all fours with Philadelphia Reading. It is different in the sense that the case involved a statutory provision. I mean, there was no statutory provision, so the IRS did not have any statutory bar on its actions. All it had was a contract where it agreed to give you some more time to review. The problem is, as I think Your Honor pointed out in your questions to Mr. Weiner, is that it's — under their argument, it essentially reads paragraph Q out of the contract. No, they concede that they breached the agreement. There's no remedy. Well, that's what we're trying to figure out. And what you — would you say, and this is why the case is difficult, you say the remedy is we get a free walk. We get to walk away from all of our tax obligations, even if they're — even if they were properly imposed. They say, no, you're stuck with them. I'm trying — and it seems to me your reasonable complaint is you should have had a chance to contest the computations. Well, but — Maybe — maybe we ought to restore the parties to the status quo ante. Would you like to — would you like to be out of the settlement agreement and have the IRS start all over again? I think I'm — I don't know that I can answer that question on the spur of the moment, Your Honor. But let me address — No, you're asking for contract remedies, and the remedy you seek strikes me as very extreme. So I'm trying to figure out what remedy puts — what remedy compensates your clients for the IRS's breach of the contract. But the problem with the remedy that you suggest, Your Honor, with all respect, is that it doesn't give us anything. Yes, of course, we have a right to — But the fact that it doesn't give you anything means that you don't have a problem with the computations. If you have a problem, I'd like to give you a remedy that allows you to contest the computations. Why doesn't that suffice? But we have that remedy anyway. You didn't — you don't need paragraph Q to contest an invalid or incorrect assessment. So if that's all we've got, paragraph Q doesn't add anything, and their breach is without a remedy. You know, there are multiple cases. The Farrell case out of the Second Circuit is one where the IRS has statutory authority to do something and gives that statutory authority up in a settlement. In Farrell, as I recall, the issue was whether the IRS could impose interest penalties that were clearly authorized by statute, and they wanted to amend their answer in front of the tax court to do that. And the court of the Second Circuit said, no, you can't do that. You made a deal, and a deal's a deal, and the fact that you're waiving a statutory right doesn't matter. And that's — with all respect, that's exactly what happened here. And what I'd like to — what I do want to do and go back to the condition proceeding point is that Judge LaPorte made an express finding at pages 15 and 18. Roberts. Of law, of law, correct? Yes. Finding of law, so we can review it de novo. I agree with that. But the critical fact for present purposes is that the IRS never raised the issue in their opening brief. They did not take issue with Judge LaPorte's conclusion of law that the paragraph Q imposed a condition proceeding on their right to make an assessment. They put all their eggs in the harmless error basket, so that when it came time for us to write our brief, we assumed without belaboring the point that Judge LaPorte was correct. Then in their reply brief, for the first time, they make the point, well, it's not really a condition precedent. And I respectfully suggest that if the Court, you know, follows that argument, we should at the very least have a right to file a supplemental brief addressing the issue, because, you know, while I have quite a lot to say about it, you know, it's hard to make a totally coherent argument in five minutes of oral argument. But let me just say this. Let me ask you this, though. Judge LaPorte was making a conclusion of law. Obviously, she wasn't making a finding because it was on summary judgment. Do you think it's purely an issue of law or not? Well, I think it is. You know, I think there's some cases out there that say that where there's extrinsic evidence, it's an issue of fact. Here, there is extrinsic evidence. And let me point to the course of dealing between the parties. On April 7th, for example, April 2007, for example, Mr. Lipton wrote the Mr. Sorenson, the IRS attorney, and said basically, you have to give us a review and comment before we – before you can impose tax. And Mr. Sorenson never said that that interpretation of the contract was incorrect. When the IRS issued its initial computational adjustments on June – in June, this is on page 156 of the record – it said, you have 90 days to review these computational adjustments, and if we don't hear from you within 90 days, then we'll assess. So the record is clear that both sides understood that completion of the review and comment period was prerequisite for the IRS's ability to assess. Moreover, the case law leads to the same conclusion. Again, in the Philadelphia case – So do you want us to read a waiver of their statutory authority into that? It's – I don't think it's a waiver. It's an additional hurdle that they had to satisfy. Well, but that's my problem. I'm not sure by contract they give away their statutory authority unless they waive it. In other words, I'm not sure they can give away their statutory authority by condition precedent. Well, but they don't – you know, they were concerned about that. In fact, one of the reasons we know it's a condition precedent is the prefatory language that the IRS insisted be inserted at the beginning of paragraph Q itself, which says, you know, that this agreement will be operative unless the IRS – unless the code provides otherwise and also prohibits an agreement contrary to its terms. So there's an escape hatch that the IRS put into paragraph Q to address the we don't have authority issue. But the problem is that although they made that contention in the district court, they don't contend now that paragraph Q was without their authority. So it's really – and indeed, if all paragraph Q gave us was the right to contest assessments that were otherwise invalid, why would the IRS have insisted on that prefatory language? It doesn't make any sense. So if – Could you also address, before your time runs out, could you address your statute of limitations argument? Yes, I will. And I think that the heart of that – There was no settlement agreement with the parties. There was a settlement agreement with the parties. And let me quote from page 136 of the record. This is the – I'm quoting from the stipulated decision document that the trial court entered. And the very first sentence is, pursuant to the agreement of the parties in this case, period. So who are the parties to this case? Well, we know who the parties in this case were. It included pursuant to Tax Court Rules 247 and 251, all the limited partners. So we do have an agreement between the IRS and the partner – and the partners in this case. That brings you within the four corners of the statute. And it's also conceded that that agreement transformed all the partnership items into non-partnership items. It both settled the partnerships' losses, deductions, et cetera. And it also allocated those losses and deductions, et cetera, to the individual partners by percentages. So when do you believe the statute began to run? No later than June 6, 2006, when the stipulated decision documents were entered. Were entered? Because in your view, the signing of the agreement itself didn't start the statute running. That's correct. And the reason for that is – Because it wasn't signed by your clients. Well, actually, there's another reason. Even if it had been, it wouldn't have started the statute running, because while it settled the partnership losses, it didn't allocate the losses to the individual partners. See, I'd have more trouble with that argument if your clients had signed the document. But in the absence of your clients entering into that agreement, it seems to me your argument has more force. Right. Our position – we're not – our position is very modest. We're not contending that the closing agreement started the statute running. We're contending that the stipulated decision documents did, which incorporated the closing agreement. And the reason that this case is different than Mathia is exactly what the statute says. The statute says that the statute starts running when partnership items get transformed into nonpartnership items by – By the tax court. By a settlement between the IRS and a partner. And that never happened in Mathia. The Mathia settlement dealt with the partnership items, but it didn't allocate them between the partners. And for that reason, the Mathia case is distinguishable. And, indeed, Mathia says so at pages 1086 and 1087 of the opinion, where the court said this would come out the other way if the settlement had transformed the partnership items into nonpartnership items. And in that event, the assessments would have been untimely because they would have run – they would have been imposed more than a year after the Greenwich stipulation or the stipulated decision had been signed. Can I ask you – I know your time has run, but I want to ask you one more question. At the time of the breach, what rights were you deprived of? We were deprived of the right to review the computational assessments and determine whether or not they were correct. That was an important bargain for – I agree. I mean, you don't have to tell me why it's important. Is there a mechanism by which we can restore you to that position? Well, we've never – I don't know what it is. I mean, I suppose you could remand, you know, with – Let you make this argument in this refund suit. You can go back and argue for whatever you would have argued for eight years ago once you figure out what it is. Right. And in fact, here's what the government said about – and this is in response to the refund claim. This is on page 297 of the record, where the government is characterizing our claims, and I quote – Well, I just want to know whether that would put you in the same position you should have been in eight years ago. If we sent it back to the district court and said, these guys may have a refund claim based on computations, the government hasn't given them the documents yet, so let them get the documents and make that claim, wouldn't that put you exactly in the position you should have been in eight years ago? Well, we would say that the position we should have been in eight years ago was that the IRS couldn't assess. I understand. I understand. I'm asking – I said let's assume that they had complied with the contract eight years ago. I'm sorry? Let's assume that they had complied with – you've already told me. Had they complied, what you would have gotten was a chance to challenge the computations. Right. I'm asking why doesn't that suffice now? I think the answer is because they didn't do it. Good. I mean, because your clients can't do better. Unring the bell. Okay. I understand. I think that's the best I can do. Thank you. Thank you, counsel. We'll put two minutes back for rebuttal. Could you start by addressing Judge Hurwitz's question? I mean, is that something that would be feasible within the framework of the IRS's statutes and regulations, that they could go back to court and have the opportunity to challenge the computations and get a refund? Or is that foreclosed by procedural rules? Your Honor, think carefully about your answer, because we want to give these guys a remedy. I understand that, which is why I pause. But again, this is – I feel a bit – the reason why I hesitate is because I represent the United States, and so my opinion alone does not – I cannot bind them. But – and because taxpayers haven't actually made that assertion, that they would like to go back and assert claims for refund, then I have not had an opportunity to vet what I think our position should be. But you're here representing the government, and we're asking you – I think he's ready to answer, though. Go ahead. I'm sorry. You have more to answer, Judge Thomas. Okay. Well, I was just going to say, but that said, I think the answer is – and I say this with hesitancy – I think the answer is no, because the fact is, is that they did not assert – I mean, they did not assert any administrative claims for refund. And there is a Treasury regulation, and there is binding Ninth Circuit precedent that says if you don't tell the IRS the basis for the reason why you should be entitled to a refund at the administrative level, then you can't tell the district court. And so – but at the same time, while I say that, Your Honor, I respectfully submit that they have had eight years. Is exhaustion a waivable defense? I think it is. Can the IRS waive an exhaustion defense? The taxpayers haven't actually asserted that – No, I understand. I'm moving ahead in my fantasy world here. And we send the case back to the trial court and say, they want to amend and assert a claim. They may not amend and assert a claim, because they may think the calculations are perfectly okay. They do, I assume, based on what you just said, you would assert an exhaustion defense, which is that they didn't make an administrative claim for this. And I'm asking you whether that can be waived or whether you can be stopped from raising it, because as the district court found, documents were necessary for them in order to do this that had never been provided. Or are those all issues for the district court? I mean, yeah – I mean, I guess those would be issues for the district court. As a theoretical matter, is exhaustion waivable? I would think the answer would be yes, it is waivable, because if we don't assert variance doctrine, then the district court goes home with its case. Right. I don't think it's a matter of, you know, legal – I can't tell you as a legal doctrine that's right, but I can tell you as a practical matter. And even today, you could engage in settlement negotiations and put this all behind you, too, right? And so you're correct. I didn't ask for your commitment. But, again, I do feel – I feel I need to impress upon this. They have had eight years to identify any problem if there's computational adjustments. The fact that they – if they decided that, like, hey, we've got $10 million waiting for us, what do we need to worry about that? I take your point, but – and I appreciate your position on appeal, but before the district court, this was an entirely different case where you said the tax court didn't have authority, they didn't have authority, you fought tooth and nail about whether the settlement agreement was viable or not. And I appreciate the fact on appeal, you're saying, yes, we – it was – we had no remedy. But my point being, below, it's an entirely different case, so it's hard for me to fault them for not doing the computations in eight years when that really wasn't at issue. Well, I mean, again, Your Honor, to put that in some perspective, what they are complaining about is not having 60 days in which to review the remended computational adjustments. Now they're saying this case wasn't even brought until four years after. So – so we're not talking about 60 days anymore. We're talking about 60 days times 60. And so – and so, again, they – if they had a fallback position, they would have – they would have identified that fallback position. The answer is that they're not interested in breach of contract claims because in this particular – these partners have no damages. Even taxpayers' counsel said the reason why we wanted this provision is to protect against improper collection actions. But there have been no improper collection actions, nor could there have been improper collection actions with respect to these taxpayers. Right. And you began your argument with that, and your brief emphasized that. But let me ask you this question. Let's assume, hypothetically, there was harm. What's the – I guess your answer on the remedy is there's really no remedy at this point. No, Your Honor. The answer would be, again, the – at the risk of asking for it, the answer is that they would have a breach of contract claim like anybody else who has a contract dispute with the United States. They either go to district court if it's under $10,000, or they go to the court of Federal claims if it's over $10,000. Right. But this – we're talking about a statute-barred claim now, aren't we? No, no, no. I mean, with respect to their – I'm sorry. I cut you off. In the court of Federal claims. Yeah. With respect to – with respect to – I mean, in terms of the statutory barred claim, on a contract claim in this particular instance. Yeah. So basically, you know, it's a six-year statute of limitations. A breach of contract before the court of Federal claims. So where does that get them? The breach occurred more than six years ago. You agree? Yeah. No, that's true. The breach occurred more than six years ago, yes. But the thing is, is that, you know, we breached the contract. It was taxpayers. Taxpayers made strategic or otherwise – they made decisions as to how they were going to seek a remedy for that. What they did was they tried to – they tried to – they tried to bring themselves a massive windfall. They're like, listen, we agreed to $4 million worth of tax liability, and we – actually, it was – it was a little bit less, but $4 million worth of tax liability, and we can – we can keep it all, plus the interest that's been running, which is $6 million as of when we filed our briefs. So we're now talking about, like, you know, the pot odds, if you play poker, you know, suggest that. It's not that they made irrational decisions. The thing is, is that they just can't justify them. Did you have a question? Yeah. Any further questions? Thank you, counsel. Thank you, Your Honor. Thank you both for your arguments. The case just heard will be submitted for decision.
judges: Thomas, Ikuta, Hurwitz